LAW OFFICES OF SAUL W. BIENENFELD P.C.              26 BROADWAY
TWENTY-FIRST FLOOR
NEW YORK, NEW YORK 10004

TEL: (212) 363-7701
E. FAX: (718) 425-0442

May 10, 2011

BY ECF
Magistrate Judge Ramon E. Reyes, Jr.
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Gavriel Bidany
                Criminal Docket No. 11-259 (RER)

Dear Judge Reyes:

      Please accept this letter in furtherance of the sentencing of Gavriel Bidany, which is now scheduled for May 12, 2011 at 11:00 AM.

INTRODUCTION

      As the Second Circuit observed, "in every case, the district court must make an individualized assessment of the appropriate sentence based on the facts presented and the facts detailed in § 3553(a)." United States v. Jones, 531 F.3rd 163, 171 (2d Cir. 2008). In making an individualized assessment, the Court is tasked with seeing each defendant in his or her unique human complexity and in light of the defendant's particular life story, determining the appropriate sentence for the crime the defendant committed.

      Gavriel Bidany was born in Israel, grew up in Israel, attended school in Israel, served in the Israeli military during wartime and was decorated by the then President of Israel. He spends his time volunteering in a soup kitchen when he is not in Yeshiva studying, making sure that the needy have food to eat. When he comes to the United States, the only purpose of his trip is to help his fellow Jew with their needs. He certainly does not come to the U.S. to vacation as a typical tourist. He has spent his entire adult life (over 30 years) doing charitable work and helping his fellow man.

      Rabbi Bidany is married and the father of eleven (11) children. As shown in the numerous letters submitted as an exhibit hereto, those children love and respect him and yearn for his return to Israel so that they can glean from their father's wisdom and benefit from his guidance and advice. As the attached letters show, Rabbi Bidany is a dedicated husband, father and son, and is a valued member of his community — one who has led a completely law abiding life.

1

His family members back home worry about him and are anxious to have their beloved husband / father / son back home with them. His wife of 24 years, Michal, proclaims him to be "a model husband, father, son, friend and neighbor whose mission in life is to help others." She refers to him as a pillar of their community. His daughter Eden informs us Gavriel Bidany not only looks after his wife and 11 children but also takes care of his parents. Rabbi Bidany has a father who is quite ill (prostate cancer) and a mother who is disabled, and according to the letter from the Council for Moshav Achiezer, Bidany is responsible for his parents' care, which he undertakes lovingly.

The letters written by Karen Raskas, Rabbi Jonathan Morgenstern, Rachel Weiss, Brooke Rubinstein and Shmuel Puretz offer a poignant view of his home life; these individuals have had the opportunity to spend time with Rabbi Bidany and his family in the Rabbi's home. See how impressed they are with the love and respect that all of his children have for him.

Rabbi Bidany's level of devotion to his family and immediate community has been rivaled at times by his commitment to society at large and common cause. See the letter of Rabbi Morgenstern who can "personally attest to the fact that he has helped countless people with personal issues, marital difficulties and life predicaments." Rabbi Morgenstern goes on to say that he too was one of those people that Rabbi Bidany helped. See the letter of Rachel Weiss who has "seen him shuttle tirelessly between his home in Israel and here where families eagerly seek his advice." See the letter of Dahlia Nordlicht who states that she has seen the Rabbi do "a tremendous amount of charity work in Israel, especially by helping to feed many hungry families throughout the year." Read the letter of Brooke Rubinstein who has hosted the Rabbi in her house and states, "I have personally witnessed an impressive amount of individuals who have come in looking burdened yet left (after a consultation with R' Bidany) in a state of obvious relief and often joy." See the other letters of people who have been counseled by Rabbi Bidany and the relief that they felt after a discussion with him.

This submission is to request that the defendant Gavriel Bidany be sentenced to time served for the crime that he was found guilty of.

FACTS OF THIS CASE

After trial, Your Honor has made a finding and has determined that the defendant is guilty of violating Title 18, United States Code, Section 113(a)(5) in that the defendant intentionally or recklessly engaged in an unwanted offensive touching of another person. The victim here testified that she felt the defendant massaging her groin and touching her breasts for a brief moment. The touching was on top of her fully clothed body and was for a relatively brief moment.

GUIDELINE CALCULATIONS AND PRECEDENT

Since the defendant was convicted of a class B misdemeanor under the United States Sentencing Guidelines 1B1.9 the guidelines do not apply. It is patently unfair of the Government to compare this matter to cases in which a guideline would apply. The Government had ample opportunity to present this case to a Grand Jury and decided not to; they cannot now on sentencing argue that if the guidelines applied the defendant

would be facing severe jail time. In defending this matter, both myself and the client took the fact that the charge is not a felony into consideration when preparing for trial; it is disingenuous for the Government now to ask you to consider what a proper sentence would be had this been a guideline matter. It is not a guideline matter and therefore other factors should be considered when sentencing the defendant.

As this Court well knows, 18 USC § 3553 (a) provides that, in determining the appropriate sentence, the district court must "make an individualized assessment based on the facts presented," which is "a broad command to consider 'the nature and circumstances of the offense and the history and characteristics of the defendant.'" Gall v. United States , 128 S.Ct. 586, 597 (2007). As Judge Rakoff of the United States District Court for the Southern District of New York explained:

> But, surely, if ever a man is to receive credit for the good he has done, and his immediate misconduct assessed in the context of his overall life hitherto, it should be at the moment of his sentencing, when his very future hangs in the balance. This elementary principle of weighing the good with the bad, which is basic to all the great religions, moral philosophies, and systems of justice, was plainly part of what Congress had in mind when it directed courts to consider, as a necessary sentencing factor, "the history and characteristics of the defendant."

United States v. Adelson, 441 F.Supp 2d 506, 513-514 (S.D.N.Y. 2006)

Rabbi Bidany was convicted of an offense where the most severe punishment would be six months imprisonment; however, he should be sentenced to a non-jail sentence under Section 3553 (a). The § 3553(a) factors include (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the advisory guideline range; (5) any pertinent policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a)

In regard to the history and characteristics of the defendant, the Court is asked to read letters submitted on the defendant's behalf indicating the true nature of his character.

Section 3553(a) also provides that sentence imposed should reflect the seriousness of the offense (a B misdemeanor in this case), adequately deter criminal conduct; and protect the public from further crimes of the defendant. In terms of the need to deter further criminal conduct, it is significant that defendant is 47 years old and has never been convicted of a crime. As the studies cited below indicate, such a defendant generally will not recidivate, making a incarceratory sentence less necessary. Defendants "over the age of forty…exhibit markedly lower rates of recidivism in comparison to younger

defendants." See *Measuring Recidivism: The Criminal History Computation of The Federal Sentencing Guidelines,* at 12, 28 (2004) available at http://www.ussc.gov/Research/Research_Publications/Recidivism/200405_Recidivism_Criminal_History.pdf ("Recidivism rates decline relatively consistently as age increases," from 35.5% under age 21 to 9.5% over 50.)

In terms of the available sentences, I contend that a non-incarceratory sentence is an appropriate sentence for a first offense.

In terms of sentencing disparity in matters where the guidelines do not apply, Courts have routinely turned their attention to precedent and have determined a sentence based on overall fairness and case law. I respectfully suggest to this Court that precedent in this District would indicate that the Defendant should receive a non-incarceration sentence. I have located four reported cases in the Eastern District of New York from 2004 to 2011 where the defendant was found guilty of the exact same charge as Gavriel Bidany and in each case received a non-jail sentence.

USA vs. Marie Hawkins 07-cr-355 (CBA), 2008 U.S. Dist. LEXIS 5366. In this 2007 case, the defendant was on Federal property, a VA Hospital, and she assaulted a VA nurse, by pushing her and pulled on her leg and resisted arrest. After a bench trial, the Magistrate Robert M, Levy found her guilty of a violation of 18 USC §113(a)(5) and sentenced her to a $20 fine and a $20 special assessment.

USA vs. Yochanan Cohen 04-cr-489 (JMA) also reported at 2008 U.S. App. LEXIS 24278. Cohen was tried and found guilty of a single count of misdemeanor abusive sexual contact after a trial before Magistrate Judge Joan M. Azrack. The facts in that matter revealed that the defendant placed his hand on the inner thigh of the passenger sleeping next to him on an airplane. The defendant then moved his hand up towards her groin before she awoke. Magistrate Azrack rejected the defendant's contention that he believed that the woman was only pretending to be asleep and that he had her permission to touch her. Judge Azrack found that no reasonable person would have inferred under these circumstances that he had permission of a stranger sitting beside him in an airplane to move his hand up her thigh and onto her groin.

After trial, Judge Azrack sentenced Yochanan Cohen to five (5) years probation, with the special condition of 500 hours of community service to be determined by Judge Azrack and the probation department. She also fined him $5,000 with a $10 special assessment. See Exhibit A Criminal Cause for Sentencing attached.

USA vs. Pierre Delis 06-cr-999 (JMA) 558 F.3d 177 (2d Cir. 2009). In this matter Delis punched a flight attendant in the chest for not offering him the meal option of chicken on his flight from Zurich, Switzerland to JFK Airport in New York. The flight attendant was later hospitalized. At his trial Delis testified that he did argue with the flight attendant but did not punch her; instead he simply pushed her hand away from his face. Magistrate Judge Azrack found Delis guilty of violating 18 USC § 113(a)(5) and sentenced him as follows: time served, no supervision and a $10 special assessment. In terms of the time served, I have checked the court records via ECF and have determined that Delis was taken into custody on September 24, 2006 at 3:55 PM and was released on bond at 3:44 PM on September 25, 2006. That is exactly one day of time served. See Exhibit B a copy of the ECF relevant paperwork including the complaint, bond and sentence.

<u>USA vs. Frank LeBrun</u> 11-cr-18 (MDG). On January 8, 2011, LeBrun, while a passenger aboard a Delta flight from France to New York, pushed a flight attendant three times because she had asked him not to smoke in the bathroom. Additionally, LeBrun was verbally abusive during the flight and when confronted by the air marshal assumed a fighting stance in response to a request to see his passport. He was arrested on the airplane by the air marshal and was released on bond by Magistrate Go on January 10, 2011. LeBrun, a French citizen, plead guilty to 18 USC § 113(a)(5) on January 10th and Judge Go sentenced him as follows: "imprisonment for a period of TIME SERVED. Supervised Release for a period of six (6) months. Defendant is permitted to reside in France and may report by telephone while outside the United States. $10.00 special assessment fee and a $500.00 fine." Here the time served was only two (2) days. See Exhibit C the ECF docket sheet, complaint, bond, sentence and judgment.

I respectfully suggest that precedent in this very district, based on the sentencing of Magistrates Levy, Azrack and Go, strongly support a non-incarceration sentence for this offense. Additionally, as Magistrate Go did in the LeBrun case, this court is free to sentence the defendant to time served and supervised release and allow the supervision to take place telephonically from the defendant's homeland Israel. Gavriel Bidany was in custody for two (2) whole days. He landed on a Sunday at 5:30 AM and was not released until the next day at 10 PM. In an effort to avoid sentencing disparity and in fairness to the defendant, a sentence of time served would be an appropriate sentence in this matter. Rabbi Bidany, who will continue his charitable works both here in the United States and in Israel, will have no problem fulfilling any obligations of supervised release.

LETTERS FROM FAMILY AND FRIENDS

Attached to this submission as Exhibit D are twenty-one (21) letters from Gavriel Bidany's family, friends and people whose lives have been affected emotionally by the Rabbi. I urge you to take the time and read each one. Each letter describes Rabbi Bidany as a warm and caring person, a beloved figurehead in his own community. You will notice letters from his concerned wife and older children who literally beg you to allow him to return quickly to Israel; there is a letter from the community leaders from the town in which he lives, letters from Rabbis of communities in the New York area, letters from those individuals whom he has helped with his counseling and guidance, and a noteworthy one written by a Captain in the United States Army who is friendly with the defendant and is a Professor of Law at West Point. It is a testament to his steadfast character that in spite of the fact that he is not a resident of the United States and was only found guilty a week ago, so many took the time to express their thoughts and feelings in writing in an effort to shed light upon the true nature of the man you are about to pronounce sentence upon. I suggest to Your Honor that with so many supporters testifying to the virtues and the many positive attributes and characteristics of Rabbi Bidany, that it would be fruitless to sentence him to any additional time behind bars.

Rabbi Bidany is filled with remorse and is deeply embarrassed about the situation that has brought him to this low point in his life. A sentence that included incarceration would serve no purpose. If the incarceration is meant to rehabilitate the individual, I submit to you that Rabbi Bidany has learned his lesson and will never place himself in a circumstance that would even remotely suggest that he acted inappropriately with another

female. If the incarceration is to punish him, Rabbi Bidany's life from this day forward has been altered, as this episode and his conviction will follow him everywhere he goes. This I suggest to you is worse than any time behind bars.

 Rabbi Bidany is extremely respectful of the law, case in point being that he was granted permission to return to Israel while out on bail and duly returned on the day that he was ordered to. These are actions of a trustworthy person. Rabbi Bidany wishes now to be treated with compassion and hopes and prays that the sentence that you hand down will be merciful and allow him to avoid incarceration and return home where he is sorely missed and needed by his wife and eleven (11) children.

CONCLUSION

 In conclusion we respectfully request that you sentence Gavriel Bidany to time served and allow him to complete any course of supervised release from Israel.

           Respectfully Submitted,

           /s/
           Saul Bienenfeld

cc: AUSA David Sarratt (via ECF)
   Clerk of Court (RR) (via ECF)